IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MYRTLE MCZEAL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-CV-01823 |
| | § | Jury Demanded |
| GULF COAST REGIONAL BLOOD | § | |
| CENTER, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff Myrtle McZeal alleges that the Gulf Coast Regional Blood Center ("The Blood Center") violated the Fair Labor Standards Act ("FLSA") by allegedly underpaying her in her final pay period before being terminated from employment. As demonstrated by the attached records, however, Plaintiff's claim is demonstrably untrue. When Plaintiff was terminated from employment on July 13, 2011, she had used far more paid time off ("PTO") than she had earned to that point in the year, and yet she had already been paid for that time. Per Blood Center policy, and as permitted under the FLSA, a portion of this used but unearned PTO time was deducted from her final paycheck, leaving her with only a nominal sum.

Because the deduction from McZeal's final paycheck was simply to recoup money that she had been overpaid earlier in the year, the deduction was lawful under the FLSA and McZeal's claims should be dismissed.[1]

## Factual Background

McZeal was employed as a full-time non-exempt employee by The Blood Center from October 8, 2007 to July 13, 2011, when she was terminated from employment. (Declaration of Yvette Rubio ¶ 3, attached as Exhibit B)

In 2011, McZeal was to accrue paid time off (PTO) at the rate of 5.23 hours every two-week pay period, for a total of 135.98 hours (5.23 x 26) over the course of the calendar year. (*Id.*)  McZeal took substantial amounts of PTO in the early part of 2011, such that by May 9, 2011, she had used 136 hours – i.e., an amount equivalent to her entire 2011 PTO allotment.   (*Id.* ¶ 4)[2]  On May 11, 2011,

---

[1]      The Blood Center, through its counsel, made multiple efforts to discuss this matter with Plaintiff's counsel without having to file this motion, yet received no response. As described in the Declaration of Michael J. Muskat (attached as Exhibit A), counsel initially provided a letter to Plaintiff's counsel on September 21, 2012, explaining the basis for the deductions to McZeal's final paycheck and attaching relevant records and legal authority demonstrating that these deductions did not violate the FLSA. (See Attachment 1 to Muskat Decl.)  Counsel requested in the letter that Plaintiff's counsel review the information and dismiss the lawsuit.  Counsel received no response to the letter, and so sent a follow-up courtesy copy of the letter via email dated October 3, 2012, and specifically asked counsel to identify what basis, if any, he had for believing that the lawsuit should continue.  (See Attachment 2 to Muskat Decl.)  Again, counsel received no response.  On October 12, 2012, counsel left a telephone message for Plaintiff's counsel, asking him to call.  For the third time, Plaintiff's counsel did not respond.

[2]      Specifically, as McZeal's PTO usage record shows, she used 16 hours of PTO in the pay period ending just before January 21, 2011; 8 hours of PTO in the period ending just before February 18; 16 hours of PTO in the period ending just before March 18; 16 hours of PTO in the

McZeal's manager was notified that McZeal had exhausted PTO for the remainder of the year.  (*Id*.)  The Blood Center paid McZeal for this time even though she had not yet earned all of it.  (*Id.*)

The Blood Center's employee handbook in effect throughout 2011 expressly addressed the subject of used but unearned PTO.  It stated that The Blood Center reserved the right to withhold pay for overused PTO from a terminating employee's final paycheck.  Ms. McZeal affirmed that she had read and reviewed the handbook containing this policy, as well as a previous version of the handbook which also contained this policy.  (*Id.* ¶ 5)

When McZeal terminated employment on July 13, 2011, The Blood Center determined how much PTO that she had used but not yet earned by that point.  (*Id.* ¶ 6)  As there had been only 14 pay periods in the year to that point, McZeal had accrued 73.22 PTO hours until that date (5.23 x 14 pay periods).  But, because she had used 136 hours of PTO, McZeal had in fact overused PTO in 2011 by 62.78 hours (73.22 – 136).  (*Id.*)

---

period ending just before April 15; 32 hours of PTO in the period ending just before April 29; and 48 hours in the period ending just before May 13.  (*Id.*)

The final pay period in McZeal's employment covered Monday, July 4, 2011 to Sunday, July 17, 2011.  In that pay period, she worked a total of 53 hours and 13 minutes, including 8 hours of paid holiday time.  (*Id*. ¶ 7)[3]

In compliance with its policy, The Blood Center deducted from McZeal's final paycheck as much pay as it could to recoup the 62.78 overused PTO hours. The Blood Center accordingly deducted the amount of $852.45, which reflected pay for the 53.22 hours she worked (or received holiday pay for) in the pay period. As shown on her final paystub, this deduction left McZeal with only a nominal amount on her final paycheck.  (*Id*. ¶ 8)[4]

<u>**Argument**</u>

### I.   McZeal Was Not Underpaid in Her Final Pay Period.

McZeal brings claims for "Unpaid Overtime" (Complaint ¶ 13) and "Unpaid Straight Time" (Complaint ¶ 14), both presumably arising out of the PTO deductions in her final paycheck.  *See* Complaint ¶¶ 11-12 (referring to unpaid

---

[3]  Specifically, as the timesheet record attached as Attachment 5 to Ms. Rubio's Declaration shows, Ms. McZeal received 8 hours of holiday pay for July 4; worked 12 hours and 4 minutes on July 5; worked 11 hours and 27 minutes on July 6; worked 11 hours and 50 minutes on July 8; worked 9 hours and 13 minutes on July 10; and worked 39 minutes on July 11.  (*Id*.)

[4]  This deduction did not entirely recoup the money that The Blood Center had overpaid McZeal earlier in the year.  McZeal had overused 62.78 hours of PTO and the deduction accounted for only 53.22 hours of that time.

overtime and straight time in connection with her final paycheck).[5]   The attached

materials, however, demonstrate the legality of those deductions.   As the materials

show, at the time of her termination of employment, McZeal had used more PTO

than she accrued.   (Rubio Decl. ¶ 4)   She continued to be paid for her PTO usage

even when that usage exceeded her accrued PTO allotment.   (*Id.*)   At termination,

The Blood Center partially recouped the overpayments it had made to McZeal

earlier in the year.   (*Id.* ¶ 8)

Deductions for used but unearned PTO are lawful under the FLSA because

the employer's payment for used but unearned PTO is an advance on wages that

the employer is permitted to recoup when employment ends and the employee has

not made up the deficit.   *See Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d

1362, 1369 (5th Cir. 1973) (employer may lawfully deduct "free and clear" wage

payments that have been advanced to the employee, even when the deductions take

pay below the minimum wage); Opinion Letter, U.S. Department of Labor,

Employment Standards Administration, Wage and Hour Division, 2004 DOLWH

LEXIS 33 (Oct. 6, 2004) (deductions for used but unearned PTO permissible under

---

[5]       To the extent that the claim for "Unpaid Overtime" described in paragraphs 8, 9, 10, and
13 of the Complaint is based on facts other than those relating to McZeal's final pay period, any
such claim must be dismissed under Rule 12(b)(6) because it fails to allege enough facts to state
a claim that is plausible on its face.  *See Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d
145, 148 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).   Specifically, paragraph
10 alleges in conclusory fashion that "Plaintiff was required to work in excess of her 40 hour
work week and was not properly paid overtime," but provides no facts in support, other than
possibly the facts set out in paragraphs 11 and 12.

the FLSA, regardless of whether overtime was worked in the final workweek or the deductions take pay below minimum wage).  *See also* Opinion Letter, U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division, 1998 DOLWH LEXIS 33 (Mar. 20, 1998) (deductions for wage overpayments permissible under the FLSA); Opinion Letter, U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division, 1977 DOLWH LEXIS 46 (Nov. 16, 1977) (same).

Accordingly, McZeal was not underpaid in her final pay period, and her claim to the contrary must be dismissed.

## II.    Plaintiff's "collective action" allegations must be dismissed as well.

Because her claims lack merit, McZeal has no standing to represent any class of purported similarly situated individuals, and no such class has been certified.   Therefore, it is appropriate to dismiss McZeal's "collective action allegations" in addition to her individual claims.  *See George v. Harris County, Tex.*, 2012 U.S. Dist. LEXIS 94318, at *54-55 (S.D. Tex. July 9, 2012); *Villagran v. Central Ford, Inc.*, 524 F. Supp.2d 866, 882 (S.D. Tex. 2007).

## Conclusion

The Gulf Coast Regional Blood Center respectfully requests that the Court grant this motion for summary judgment and dismiss McZeal's claims in their entirety.

Respectfully submitted,


/s/ Michael J. Muskat
MICHAEL J. MUSKAT
Attorney-in-Charge
State Bar No. 24002668
S.D. Tex. Bar No. 22816
MUSKAT, MARTINEZ & MAHONY, LLP
440 Louisiana Street, Suite 590
Houston, Texas 77002
Telephone:  713-987-7850
Telecopier:  713-987-7854


Attorneys for Defendant

OF COUNSEL:
Allison R. May
State Bar No. 24059281
MUSKAT, MARTINEZ & MAHONY, LLP
1201 Louisiana Street, Suite 850
Houston, Texas  77002
Telephone:  (713) 987-7850
Facsimile:  (713) 987-7854
Email:  amay@m3law.com


## CERTIFICATE OF SERVICE

This is to certify that on November 1, 2012, a true and correct copy of this pleading has been served on Plaintiff's counsel of record via the Electronic Case Filing system.


/s/ Michael J. Muskat
MICHAEL J. MUSKAT

7